United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ZAHIR NASERI,

Plaintiff,

v.

XAVIER BECERRA,

Defendant.

Case No. 24-cv-07814-DMR

**ORDER GRANTING IFP APPLICATION AND SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(E)**

On November 8, 2024, *pro se* Plaintiff Zahir Naseri filed a complaint and an application for leave to proceed *in forma pauperis* ("IFP"). [Docket Nos. 1 ("Compl."), 2.] On November 14, 2024, following review of his IFP application, the court directed Naseri to submit a more complete IFP application or pay the filing fee. [Docket No. 4.] On November 22, 2024, Naseri submitted a second IFP application. [Docket No. 6.] Having considered Naseri's papers, the court grants the second IFP application and finds that the complaint fails to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e). Naseri must file a first amended complaint that addresses the deficiencies identified in this screening order by **April 30, 2025**. Failure to do so may result in a recommendation that the case be dismissed for failure to prosecute.

## I. BACKGROUND

The complaint alleges that Naseri is an employee of the General Services Administration ("GSA"). [Compl. ¶ 9.] On April 24, 2023, Naseri alleges that he traveled from the GSA office on the seventh floor of the Philip Burton Federal Building in San Francisco to the Department of Health and Human Services ("HHS") clinic on the second floor of the same building "to receive urgent medical treatment for a life-threatening emergency." [*Id.*] Naseri alleges that he entered the clinic and encountered a "White female nurse in her 50s," DeAnna Sheeley, whom he told that he "was experiencing excruciating leg and back pain, shortness of breath, high blood pressure, and

symptoms suggesting blood clots in [his] leg," and that he had visited a "hospital Emergency Room" the day before for these issues. [*Id.*] Naseri alleges that he told Sheeley that he is diabetic and has a history of blood clots, "emphasizing [his] need for medical assistance." [*Id.*] Naseri alleges that Sheeley looked at his GSA credentials, made a "very cursory observation of [him] from head to toe," told him to wait, and "after about 30 seconds" returned to tell him that "GSA does not have a drop-in contract; we only have a general contract. I am not treating you." [*Id.* ¶¶ 9-10.] Naseri allegedly again explained his health issues, including that he is diabetic and has a history of blood clots, and reiterated that he had visited the Emergency Room the day prior; in response, Sheeley allegedly "pointed to the door," "did not call 911," and said: "Leave, I am not treating you." [*Id.* ¶ 11.] Naseri alleges that Sheeley displayed "body language" that "suggested a clear disdain and hatred towards [him]." [*Id.*] Naseri returned to the GSA office, where his supervisor "immediately dismissed [him] upon seeing [his] poor health condition." [*Id.*]

Naseri brings claims against HHS for breach of contract as a third-party beneficiary [*id.* ¶¶ 12-14, 19]; disparate treatment due to disability under the Rehabilitation Act [*id.* ¶¶ 16, 21]; discrimination based on race, color, or national origin pursuant to Title VII of the Civil Rights Act of 1964 [*id.* ¶¶ 17, 20]; violation of the Duty to Render Emergency Assistance – California Health and Safety Code § 1317 [*id.* ¶ 22]; and violation of the federal Emergency Medical Treatment and Labor Act [*id.* ¶ 23]. Naseri seeks damages in the amount of $4.5 million for pain and suffering as well as injunctive relief in the form of sensitivity trainings by HHS. [*Id.* ¶¶ 24-25.] Previously, on May 2, 2023, Naseri filed his complaint as to his discrimination claims with the HHS Office of Equal Employment Opportunity ("EEO") on May 2, 2023, and received a final agency decision on October 22, 2024. [*Id.* ¶ 18.][1]

## II. LEGAL STANDARD

A court may allow a plaintiff to prosecute an action in federal court without prepayment of fees or security if the plaintiff submits an affidavit showing that he or she is unable to pay such

---

[1] Naseri attaches a copy of the HHS EEO decision to his Complaint. The court notes that Naseri timely filed the instant action within the 90-day window allowed from his final agency decision, as explained in the Notice of Appeal Rights (EEOC). [Compl. at ECF 16-17.]



United States District Court
Northern District of California

fees or provide such security. *See* 28 U.S.C. § 1915(a). The court's grant of Plaintiff's application to proceed IFP, however, does not mean that he may continue to prosecute the complaint. A court is under a continuing duty to dismiss a case filed without the payment of the filing fee whenever it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). If the court dismisses a case pursuant to section 1915(e)(2)(B), the plaintiff may still file the same complaint by paying the filing fee. This is because the court's section 1915(e)(2)(B) dismissal is not on the merits, but rather an exercise of the court's discretion under the IFP statute. *See Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

To make the determination under 28 U.S.C. § 1915(e)(2)(B), courts assess whether there is an arguable factual and legal basis for the asserted wrong, "however inartfully pleaded." *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984). Courts have the authority to dismiss complaints founded on "wholly fanciful" factual allegations for lack of subject matter jurisdiction. *Id.* at 1228. A court can also dismiss a complaint where it is based solely on conclusory statements, naked assertions without any factual basis, or allegations that are not plausible on their face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (noting that 28 U.S.C. § 1915(e)(2)(B) "accords judges . . . the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless . . . [such as] claims describing fantastic or delusional scenarios").

Although *pro se* pleadings are liberally construed and held to a less stringent standard than those drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), a complaint, or portion thereof, should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007); *see also* Fed. R. Civ. P. 12(b)(6). "[A] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quotations omitted).

United States District Court
Northern District of California

**III. IFP APPLICATION**

Having evaluated Naseri's second financial affidavit, the court finds that Naseri has satisfied the economic eligibility requirement of 28 U.S.C. § 1915(a) and grants his application to proceed IFP.

**IV. DISCUSSION**

**A. Breach of Interagency Agreement**

Naseri first alleges that he is a third-party beneficiary of the interagency agreement between GSA and HHS, under which "HHS is responsible for providing comprehensive solutions and treatment to Federal agencies to address their occupational health needs." Naseri alleges that HHS breached this agreement when Nurse Sheeley denied him medical treatment. [*Id.* ¶¶ 12-13.]

"Federal law governs the interpretation of contracts entered pursuant to federal law where the federal government is a party." *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1032 (9th Cir. 2012) (quoting *Chickaloon–Moose Creek Native Ass'n, Inc. v. Norton,* 360 F.3d 972, 980 (9th Cir. 2004)). Naseri's allegations concern the interagency agreement between HHS and GSA, and so the court turns to federal common law for its analysis. *See id.* at 1032-33. Under federal common law, "only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach." *Id.* at 1033 (citing *Far West Fed. Bank, S.B. v. Off. of Thrift Supervision-Dir.*, 119 F.3d 1358, 1363 (9th Cir. 1997)). "The fact that a third party may incidentally benefit under the contract does not confer on him the right to sue; instead, the parties must have intended to benefit the third party." *Id.* (citing *Klamath Water Users Prot. Assoc. v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)).

"To prove intended beneficiary status, 'the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party.'" *Id.* (quoting *Klamath*, 204 F.3d at 1211). "Intended third-party beneficiary status isn't established by 'a contract's recitation of interested constituencies, vague hortatory pronouncements, statements of purpose, explicit reference[s] to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind.'" *In re Bank of Am. Cal.*

*Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 938 (S.D. Cal. 2023) (alterations in original) (quoting *GECCMC 2005-C1*, 671 F.3d at 1033). "Instead, the language of the contract must show a 'clear intent' to rebut the presumption that the [third parties] are merely incidental beneficiaries." *Id.* (alterations in original) (quoting *Orff v. United States*, 358 F.3d 1137, 1145 (9th Cir. 2004)). "The contract need not name a beneficiary specifically or individually in the contract; instead, it can specify a 'class clearly intended by the parties to benefit from the contract.'" *GECCMC 2005-C1*, 671 F.3d at 1033 (quoting *Klamath*, 204 F.3d at 1211). "Nevertheless, demonstrating third-party beneficiary status in the context of a government contract is a comparatively difficult task." *Id.* (internal quotation marks and citation omitted). "When a government contract is at issue, plaintiffs must overcome a presumption that nonparties who benefit from the contract are incidental, rather than intended, beneficiaries." *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d at 938 (citation omitted).

Naseri has plausibly alleged the existence of an interagency agreement between HHS and GSA that is related to the alleged denial of his medical treatment. According to the complaint, Sheeley told Naseri that "GSA does not have a drop-in contract; we only have a general contract" prior to allegedly refusing to treat him. [*Id.* ¶ 10.] But Naseri's further allegations are insufficient to establish that he is a third-party beneficiary of this contract. Naseri simply alleges that he is a third-party beneficiary because the agreement is "explicitly intended to benefit GSA's employees directly," and that HHS "breached [its] contractual obligation by denying necessary medical emergency treatment to the plaintiff, who is a beneficiary." [*Id.* ¶¶ 13-14.] Even liberally construed, Naseri's allegations are too conclusory to confer on him "rights [that] are judicially enforceable," as compared to the rights of "incidental beneficiaries [which] rights are not judicially enforceable." *GECCMC 2005-C1*, 671 F.3d at 1033. Moreover, Naseri has not obtained a copy of the interagency agreement and cannot point to any of its terms. The complaint acknowledges this and alleges that Naseri "will acquire" a copy of the agreement "[d]uring the discovery phase." [*Id.* ¶ 13.] But a plaintiff "must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it." *Mujica v. AirScan, Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (emphasis in original) (citing *Iqbal*, 556 U.S. at 678-79); *see also Iqbal*, 556 U.S. at 678

(noting that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). Because he has made only conclusory allegations about his status as a third-party beneficiary of the HHS-GSA agreement, Naseri fails to state a claim for breach of contract.

**B. Disability Discrimination Under the Rehabilitation Act**

Naseri next alleges that Sheeley's alleged refusal to provide medical care due to his disability constitutes disparate treatment under section 504 of the Rehabilitation Act, 29 U.S.C. § 794. [Compl. ¶ 16.] Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a). Section 504 is "materially identical to and the model for the [Americans with Disabilities Act ("ADA")], except that it is limited to programs that receive federal financial assistance . . . ." *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013) (internal quotation marks and citation omitted). "A plaintiff bringing a section 504 claim [] must show that (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 650 (9th Cir. 2021).

To specifically plead disparate treatment due to disability, "a plaintiff must allege that other non-disabled individuals without plaintiff's disability were treated more favorably." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 1001 (E.D. Cal. 2017) (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265-66 (9th Cir. 2004)). Naseri alleges the following:

> [F]irst, the plaintiff informed the defendant twice about being diabetic; second, the plaintiff was qualified and benefited from the program; third, the defendant took adverse action by denying medical emergency treatment because of the plaintiff's disability; and fourth, the program was associated with a federal interagency contract or agreement; fifth, none of the GSA's employees from different races, colors, or national origin have ever been turned away from receiving walking medical treatment according to my former coworkers and supervisor.

[Compl. ¶ 16; *see also id.* ¶ 21 ("The defendant violated the Rehabilitation Act of 1973 and committed disparate treatment by denying service of the federal government because of the plaintiff's disability.").]

To establish that he has a disability, Naseri must allege that he has (1) an impairment that (2) substantially limits (3) a major life activity. *See Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1225 (9th Cir. 2022). "Diabetes is a physical impairment under the ADA because it is a physical condition affecting the digestive, hemic, and endocrine systems," and "EEOC regulations specifically include diabetes in the definition of a physical impairment." *Fraser v. Goodale*, 342 F.3d 1032, 1038 (9th Cir. 2003) (citations omitted). However, "[w]hether [an individual]'s diabetes substantially limits [a major life activity] is an 'individualized inquiry.'" *Rohr v. Salt River Project Agricultural Imp. & Power Dist.*, 555 F.3d 850, 858 (9th Cir. 2009) (citing *Fraser*, 342 F.3d at 1039). It is unclear from Naseri's few allegations whether or how diabetes substantially limits one or more major life activities, or whether he is alleging he has other physical impairments that meet the statutory definition of a disability. Accordingly, Naseri has not adequately alleged that he is a person with a disability.

Even assuming that Naseri adequately alleged that he is a person with a disability, Naseri's other allegations are insufficient to state a claim for disparate treatment under the Rehabilitation Act. First, he does not allege disparate treatment by HHS compared to other non-disabled individuals, stating instead that "none of the GSA's employees from different races, colors, or national origin have ever been turned away." [Compl. ¶ 16.] Naseri has not alleged, as he would need to, that other non-disabled individuals were treated more favorably than he was. Naseri's allegations are also conclusory and speculative with respect to the third element of causation—i.e., how Sheeley's alleged denial of medical treatment occurred as a result of his disability. Naseri alleges that he told Sheeley he was diabetic and that she looked at him with hatred, but he does not specifically allege any facts to suggest that she looked at him in this way because he told her that he was diabetic and then denied him treatment as a result. Finally, for the reasons discussed in analyzing his breach of contract claim, Naseri has not pled sufficient non-conclusory facts to explain how he was qualified to benefit from the HHS program.

**C. Title VII Discrimination**

Naseri also brings a claim for discrimination based on race, color, or national origin pursuant to Title VII. [*Id.* ¶ 20.] Title VII of the Civil Rights Act of 1964 makes it unlawful "for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A prima facie case of disparate treatment discrimination under Title VII requires that a plaintiff allege he "(1) belongs to a protected class; (2) [] was qualified for [his] position; (3) [] was subject to an adverse employment action; and (4) similarly situated individuals outside [his] protected class were treated more favorably." *Davis v. Team Elec. Co.*, 520 F.3d, 1080, 1089 (9th Cir. 2008) (citation omitted). "As to the third element, an adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'" *Id.* (alterations in original) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)).

Naseri alleges that he is a GSA employee, yet his allegations concern denial of medical treatment by HHS, another government agency. Because Naseri appears to be suing another federal agency that is not his employer, he cannot satisfy the element of an adverse employment action under Title VII. *See, e.g.*, *Carr v. United States*, No. 20-cv-00744-WHO, 2020 WL 4584193, at *2 (N.D. Cal. Aug. 10, 2020) (finding Title VII inapplicable to claim brought by plaintiff, who was not an IRS employee, against the IRS).

Accordingly, HHS is not Naseri's employer, so Title VII does not apply.[2]

[2] It is possible that Naseri meant to bring a claim under Title VI of the Civil Rights Act, which prohibits discrimination based on "race, color, or national origin" in programs or activities receiving federal financial assistance. 42 U.S.C. § 2000d et seq. To state a race discrimination claim under Title VI, a plaintiff must allege that "(1) the defendant entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance." *Drawsand v. F.F. Props., LLP*, 866 F. Supp. 2d 1110, 1122 (N.D. Cal. 2011). To satisfy these elements, Naseri will have to plausibly allege that Sheeley "acted with an intent or purpose to discriminate based upon [his] membership in a protected class," *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 522 (9th Cir. 2011) (internal citation and quotation marks omitted), and that the HHS clinic receives federal financial assistance.

**D. EMTALA and Analogous State Law**

Naseri brings one claim under the federal Emergency Medical Treatment and Labor Act ("EMTALA") and another claim under EMTALA's California analogue, California Health and Safety Code § 1317. Naseri's EMTALA claim alleges in full that "defendant violated [EMTALA] for denying medical emergency treatment to the plaintiff. EMTALA is a federal law enacted in 1986 that requires hospitals and healthcare facilities to provide emergency medical treatment to anyone needing care, regardless of their insurance status or ability to pay." [Compl. ¶ 23.]

"Congress enacted EMTALA to ensure that individuals, regardless of their ability to pay, receive adequate emergency medical care." *Myers v. UCSF Med. Ctr.*, No. 22-cv-07813-JCS, 2023 WL 6202065, at *6 (N.D. Cal. Mar. 2, 2023) (quoting *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1165 (9th Cir. 2002)). "Any individual who suffers personal harm as a direct result of [an EMTALA violation] may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." 42 U.S.C. § 1395dd(d)(2)(A); *see also Kilcup v. Adventist Health, Inc.*, 57 F. Supp. 2d 925, 928 (N.D. Cal. 1999).

EMTALA provides that, "[i]f an individual seeks emergency care from a hospital with an emergency room and if that hospital participates in the Medicare program, then 'the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists.'" *Bryant*, 289 F.3d at 1165 (alterations in original) (footnote omitted) (quoting 42 U.S.C. § 1395dd(a)). Under EMTALA, an "emergency medical condition" is defined in relevant part as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1). "If the hospital's medical staff determines that there is an emergency medical condition, then . . . the staff must 'stabilize' the patient before transferring or discharging the patient." *Bryant*, 289 F.3d at 1165 (citing 42 U.S.C. § 1395dd(b)(1); *Baker v. Adventist Health,*

*Inc.*, 260 F.3d 987, 992 (9th Cir. 2001)). Where an EMTALA claim is limited to denial of an "appropriate medical screening," the inquiry turns to whether the hospital provided "an examination comparable to the one offered to other patients presenting similar symptoms." *Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1255-56 (9th Cir. 2001) (cleaned up).

Naseri's cursory allegations for his EMTALA claim are insufficient. He alleges that he was denied medical treatment at the "[HHS] clinic on the second floor of the Philip Burton Federal Building." [Compl. ¶ 9.] The allegations in the complaint do not plausibly support an inference that the HHS clinic is a facility equipped with the ability to provide emergency services within the bounds of EMTALA. In fact, Naseri alleges that Sheeley "did not call 911" [*id.* ¶ 11], suggesting that the HHS clinic itself could not provide emergency services.

Even if Naseri were able to plausibly allege that the HHS clinic fell within EMTALA coverage, he does not allege how he suffered harm as a direct result of the alleged EMTALA violation. Naseri notes only that "[w]ith no option left, [he] had to leave the clinic and return to [his] GSA office, where [his] supervisor immediately dismissed [him] upon seeing [his] poor health condition." [*Id.*] While Naseri seeks $4.5 million in damages for "[p]ain and suffering" [*id.* ¶ 24], he does not allege any specific harm resulting from the alleged denial of medical treatment for his condition—for example, that his allegedly serious or emergency symptoms worsened. *Cf., e.g.*, *Crawford v. Kaiser Foundation Health Plan*, 395 F. Supp. 3d 1279, 1282, 1290 (N.D. Cal. 2019) (finding that plaintiff stated a viable EMTALA claim against hospital where, as a result of her alleged inadequate emergency medical treatment, she later "was in septic shock, suffering from tachycardia, and had deteriorated to the point that she nearly died" (internal citation omitted)). In sum, Naseri fails to adequately plead an EMTALA claim.

"Health and Safety Code section 1317 is California's version of EMTALA." *Siskiyou Hosp., Inc. v. County of Siskiyou*, 330 Cal. Rptr. 3d 221, 232 n.3 (Cal. App. Ct. 2025) (citing *Brooker v. Desert Hosp. Corp.*, 947 F.2d 412, 415 (9th Cir. 1991)). Like EMTALA, section 1317 provides, among other things that

> Emergency services and care shall be provided to any person requesting the services or care, or for whom services or care is

> requested, for any condition in which the person is in danger of loss of life, or serious injury or illness, at any health facility licensed under this chapter that maintains and operates an emergency department to provide emergency services to the public when the health facility has appropriate facilities and qualified personnel available to provide the services or care.

Cal. Health & Safety Code § 1317(a). "Emergency services and care" are defined as "medical screening, examination, and evaluation by a physician . . . to determine if an emergency medical condition or active labor exists and, if it does, the care, treatment, and surgery, if within the scope of that person's license, necessary to relieve or eliminate the emergency medical condition, within the capability of the facility." *Id.* § 1317(a)(1). The California statute also contains a safe harbor for health facilities and their employees who "refus[e] to render emergency services or care if the refusal is based on the determination, exercising reasonable care, that the person is not suffering from an emergency condition, or that the health facility does not have the appropriate facilities or qualified personnel available to render those services." *Id.* § 1317(c).

Naseri's claim under section 1317 fails for the same reasons as do his EMTALA claim. Naseri has not alleged that the HHS clinic is a qualifying facility that can provide emergency services, and his allegations as presented in the complaint do not clearly allege that he was harmed by the alleged denial of treatment.

## V. CONCLUSION

For the reasons above, the court grants Naseri's second IFP Application and finds that the complaint fails to state a claim pursuant to 28 U.S.C. § 1915(e). Naseri must file a first amended complaint addressing the deficiencies identified in this order by **April 30, 2025.** If Naseri does not file a timely first amended complaint, the court will recommend that this action be dismissed for failure to prosecute.

The court refers Naseri to the section "Representing Yourself" on the Court's website, located at https://cand.uscourts.gov/pro-se-litigants/, as well as the Court's Legal Help Centers for unrepresented parties. Parties may schedule an appointment by calling 415-782-8982 or emailing fedpro@sfbar.org.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: March 31, 2025

Honorable Donna M. Ryu
United States Chief Magistrate Judge